# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-754

DAVID C. MORAN, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 22, 2003                                   Decided    June 20, 2003 )

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Gary E. O'Connor*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Edward V. Cassidy, Jr.*, Acting Deputy Assistant General Counsel, were on the pleadings, all of Washington, D.C., for the appellee.

Before KRAMER, *Chief Judge*, and FARLEY and STEINBERG, *Judges*.

KRAMER, *Chief Judge*, filed the opinion of the Court. STEINBERG, *Judge*, filed an opinion concurring in part.

KRAMER, *Chief Judge*: The appellant appeals, through counsel, a January 29, 1999, Board of Veterans' Appeals (Board or BVA) decision that denied his claim for service connection for post-traumatic stress disorder (PTSD). Record (R.) at 2, 3-4, 5. The appellant and the Secretary have filed briefs, and the appellant has filed a reply brief. The parties also have filed, pursuant to two Court orders, supplemental pleadings addressing the impact on this appeal of the enactment of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (VCAA), and this Court's opinion in *Holliday v. Principi*, 14 Vet.App. 280 (2001). In addition, the Court ordered the parties to address two questions concerning the validity of 38 C.F.R. § 3.304(f). In response, the appellant and the Secretary have filed supplemental briefs, and the appellant has filed a supplemental reply brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a)

and 7266(a). For the reasons that follow, the Court will vacate the Board's decision and remand the matter for readjudication consistent with this opinion.

## I. Background

The appellant served on active duty from January 1969 to November 1970, including service in Vietnam. R. at 12, 223. His service personnel records reflect, inter alia, that his military occupational specialty (MOS) was cook (R. at 12, 222) and that, during his tour of duty in Vietnam, he was assigned to Company A, 20th Engineer Battalion (R. at 223, 225). In January 1983, the appellant submitted an application for VA compensation or pension benefits for, inter alia, "nerves." R. at 55-58; *see* R. at 62-63 (discharge summary for private hospitalization from December 12, 1982, to January 14, 1983; physician diagnosed appellant with dysthymic disorder in schizoid personality); *see also* R. at 190-96 (from December 1982 to October 1983, appellant seen at second private hospital complaining of anxiety, depression, nervousness, and trouble sleeping). On March 10, 1983, the appellant was afforded a VA psychiatric examination; the examiner diagnosed the appellant as having a dysthymic disorder by history with predominant components (gastrointestinal). R. at 76-77; *see* R. at 68 (March 1983 VA medical certificate listing diagnosis of probable chronic depressive disorder). A VA regional office (RO), in an April 15, 1983, decision, denied the appellant's claim for service connection for a nervous disorder. R. at 79-80. The appellant did not appeal that RO decision.

On September 12, 1994, the appellant submitted an application for VA compensation or pension benefits for PTSD. R. at 93-96; *see* R. at 87-89 (appellant hospitalized in VA hospital from August 22, 1994, to September 19, 1994; examiner diagnosed appellant as having PTSD and stated in addendum that PTSD was considered to be result of stress incurred during tour of duty in Vietnam), 98-126 (progress notes from hospitalization); *see also* R. at 134-39, 141-47, 259-76. An October 17, 1994, VA psychological evaluation report reflects that the appellant related to the examiner that, during his service in Vietnam, he had seen combat and had spent most of his time not as a cook but as a guard for an engineering battalion that built roads and bridges. R. at 128-31. The examiner diagnosed the appellant as having PTSD. R. at 131. From January 2, 1995, to January 11, 1995, the appellant was hospitalized in a VA medical center. R. at 556-58; *see* R. at 158, 160-61,

2

163-74. As a result of that hospitalization, the appellant was diagnosed as having, inter alia, PTSD (Axis I) and borderline traits (Axis II). R. at 556; *see* R. at 175-77, 199-204, 228-34 (progress notes, dated from December 1994 to September 1995, relating to appellant's counseling sessions at VA Mental Health Clinic).

The RO, in a February 1995 letter to the appellant, requested that he complete and return to the RO an enclosed PTSD stressor verification form. R. at 183. Subsequently, on March 23, 1995, the appellant underwent a VA PTSD examination. R. at 206-09. In the report of that examination, the examiner noted that the appellant had related that, during his tour of duty in Vietnam, he had been a cook most of the time and had to "fill in in field operations" and on guard duty occasionally; the examiner further noted that the appellant had related that "his only combat duty was to protect the unit on guard duty and other such details." R. at 207. The examiner diagnosed the appellant as having, inter alia, dysthymia, chronic, and history of PTSD (Axis I) and personality disorder, not otherwise specified, with borderline and antisocial traits (Axis II). R. at 209. The examiner opined that the appellant's symptomatology was not significant for PTSD and that his symptomatology was much more suggestive of a chronic dysthymic condition coupled with a significant personality disorder. The examiner further opined that he considered the Axis II pathology to be a significant part of the appellant's current manifestations and symptoms. *Id.* In an April 17, 1995, decision, the RO determined that new and material evidence had not been submitted to reopen the appellant's claim for service connection for a nervous condition, to include PTSD. R. at 217-19. The appellant did not appeal that decision.

In October 1996, the appellant submitted a stressor affidavit. In that affidavit, he asserted that (1) in March 1970, while his unit was assigned duties at "Camp Enari, II Corps area of operations," he frequently was subjected to mortar fire over approximately a two-week period, and (2) regardless of where his unit was stationed in Vietnam, the unit was subjected nightly to sniper fire and he particularly remembered the sniper fire that occurred when the unit was stationed at An Khe. R. at 377; *see* R. at 566 (during counseling session, relating experiences of mortar fire and sniper fire in Vietnam). In a December 1996 decision, the RO again determined that new and material evidence had not been submitted to reopen the appellant's PTSD-service-connection claim. R. at 381-83. The appellant timely appealed that RO decision (R. at 385, 397), and the RO issued

to him a Statement of the Case (SOC) (R. at 390-95). The Board, in a June 25, 1997, decision, concluded that new and material evidence had been submitted to reopen the appellant's service-connection claim and remanded that claim to the RO for further development. R. at 399-409.

Pursuant to that remand, the RO, in October 1997, sent a letter to the U.S. Armed Services Center for Research of Unit Records (USASCRUR) requesting supportive evidence for the appellant's PTSD claim, specifically verification of his asserted stressors. R. at 536. In April 1998, USASCRUR responded to that RO request with (1) a letter in which the director of USASCRUR stated, inter alia, that, after extensive research of available U.S. Army combat unit records for the appellant's assigned unit and its higher headquarters, USASCRUR was unable to verify the appellant's listed stressors (R. at 579) and (2) copies of "Operational Reports - Lessons Leaned" submitted by the appellant's unit listing the unit's locations, missions, operations, and significant activities during his tour of duty in Vietnam (R. at 580-613).

In June 1998, also pursuant to the June 1997 BVA remand, the appellant was afforded a VA mental disorders examination. R. at 617-21. The report of that examination reflects that the appellant had related to the examiner, inter alia, a history of "recollections of combat experiences." R. at 618. The examiner diagnosed the appellant as having, inter alia, obsessive-compulsive disorder and dysthymia (Axis I) and personality disorder, not otherwise specified, with borderline features (Axis II). R. at 619-20. The examiner opined that the appellant "d[id] not present in the manner in which one would normally expect to see someone with PTSD." R. at 620. He further opined that the primary diagnosis, based on the appellant's symptoms, was borderline personality disorder and that such symptomatology was not the type that arose from military service, rather it predated military service. R. at 620-21. The examiner stated that, on the basis of his interview with the appellant and his review of the appellant's medical record, the appellant does not have PTSD. R. at 621. He finally stated that he does not believe that the symptoms of the appellant's obsessive-compulsive disorder and borderline personality related to the appellant's military service because there was no evidence of record that the symptomatology arose from military experience. *Id*. Subsequently, on July 27, 1998, the RO issued to the appellant a Supplemental SOC in which his claim for service connection for PTSD was denied. R. at 659-60.

4

In the January 29, 1999, Board decision on appeal, the BVA found, inter alia, that the appellant's service personnel records and his DD214 reflect that he had served in Vietnam and that his MOS was cook but do not reflect that he was awarded any medals indicating exposure to combat. R. at 3. The Board further found that the appellant had submitted a stressor affidavit as to mortar fire and sniper fire but that USASCRUR records do not reveal that his unit had experienced any mortar or sniper fire and that, therefore, USASCRUR was not able to verify his asserted stressors. R. at 3-4. The Board determined that the record contains no evidence to corroborate either combat service or the in-service stressors claimed by the appellant. R. at 2, 4. The Board concluded that, therefore, service connection for PTSD was not warranted because any such disorder was not incurred in service and denied the appellant's claim. R. at 2, 4, 5.

The appellant timely appealed the January 1999 Board decision to this Court. Oral argument before the instant panel was heard on April 22, 2003.

## II. Analysis

### A. VCAA

Subsequent to the Board decision on appeal, Congress enacted the VCAA. The VCAA, inter alia, amended 38 U.S.C. § 5103 ("Notice to claimants of required information and evidence") and added 38 U.S.C. § 5103A ("Duty to assist claimants"). VCAA § 3(a). In this regard, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has issued two decisions addressing the retroactive applicability of some of the provisions of the VCAA. *See Bernklau v. Principi*, 291 F.3d 795, 803-06 (Fed. Cir. 2002); *Dyment v. Principi*, 287 F.3d 1377, 1385 (Fed. Cir. 2002). In both of those opinions, "the Federal Circuit held that the sections of the VCAA codified at 38 U.S.C. §§ 5102, 5103, and 5103A, concerning notice and assistance to be provided to claimants by VA, are not retroactively applicable to proceedings that were complete before VA and were on appeal to this Court or the Federal Circuit when the VCAA was enacted." *Stephens v. Principi*, 16 Vet.App. 191, 193 (2002) (per curiam order) (citing *Bernklau*, 291 F.3d at 803-06). Because the appellant's PTSD claim was "on appeal to this Court" at the time that Congress enacted the VCAA, the notice and assistance provisions of the VCAA are inapplicable to this proceeding. *Stephens, supra.* The Court, therefore, will proceed to the merits of the appellant's arguments.

5

**B. Combat Status**

The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(a), (d)(1); *Charles v. Principi*, 16 Vet.App. 370, 373 (2002); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

In the instant case, as the appellant contends, the Board failed to discuss adequately whether he had served in combat. Appellant's Brief (Br.) at 6-11. In this regard, in concluding that the appellant had not served in combat, the BVA relied upon his MOS of cook and the absence of any notation either in his service personnel records or on his DD214 that he had been awarded any medals or commendations indicating that he had been exposed to combat. R. at 3. The Board, however, completely failed to discuss the appellant's assertions that he had engaged in combat. R. at 3-4; *see* R. at 128 (October 1994 VA psychological report reflecting that appellant had related that he had seen combat while in Vietnam), 206-07 (March 1995 VA PTSD examination report indicating that appellant had described his combat duty as protecting unit to which he was assigned), 566 (during counseling session, relating experiences of mortar fire and sniper fire), 618 (June 1998 VA mental disorders examination report reflecting that appellant had related that he experienced recollections of combat experiences); *Gaines v. West*, 11 Vet.App. 353, 359 (1998) (finding error where, in analyzing whether appellant had engaged in combat, Board partly relied on lack of award of medals showing combat service but neglected to address, inter alia, appellant's sworn testimony that he had engaged in combat); *Cohen v. Brown*, 10 Vet.App. 128, 145-46 (1997) (concluding, as to combat status, that Board erred where it failed to make finding as to credibility of appellant's sworn testimony describing his duties in Vietnam; further stating that 38 U.S.C. § 1154(b) does not require BVA to accept appellant's

6

assertion that he engaged in combat with enemy and that such status is determined based on evidence of record in each case); *Dizoglio v. Brown*, 9 Vet.App. 163, 166 (1996) (engagement in combat is not necessarily determined simply by reference to existence or nonexistence of certain awards or MOSs). In addition, it is not entirely clear whether the Board was requiring corroboration of the appellant's statements as to his combat service. *See* R. at 4 (BVA stating that "record contains no corroboration of combat service"). Such a baseline requirement, however, which has no statutory or regulatory basis, is not appropriate. Further, the BVA failed to discuss the application of the benefit-of-the-doubt rule. *See* 38 U.S.C. § 5107(b); *Gaines*, 11 Vet.App. at 359.

The Court thus concludes that the Board failed to consider adequately "all evidence and material of record and applicable provisions of law" and to provide an adequate statement of reasons or bases for its decision. 38 U.S.C. § 7104(a), (d)(1); *see Charles, Weaver, Allday, Caluza, Gabrielson,* and *Gilbert,* all *supra*. Accordingly, the Court will vacate the January 1999 Board decision and will remand the appellant's PTSD claim for readjudication.

Given this disposition as to the combat-status issue, the Court need not address the appellant's remaining arguments as to the need for remand because he has not demonstrated that he would be prejudiced by a remand of his PTSD claim without consideration of those assertions of VA error because the asserted errors could likely be properly raised or eventually remedied on remand to the Board. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) (remand is meant to entail critical examination of justification for decision; Court expects that BVA will reexamine evidence of record, seek any other necessary evidence, and issue timely, well-supported decision). On remand, the appellant is free to submit additional evidence and argument, including the arguments raised in his opening and reply brief to this Court, in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating, in case where Court remanded claim and declined to address appellant's additional arguments as to BVA error, that, on remand, appellant is free to raise such arguments to Board and Board must address those arguments).

## C. Validity of 38 C.F.R. § 3.304(f)

7

In readjudicating on remand the appellant's PTSD claim, if the Board again determines that the appellant did not engage in combat, the BVA would be required to apply, inter alia, 38 C.F.R. § 3.304(f), specifically the requirements pertaining to non-combat veterans. Therefore, the Court will address the appellant's contention that the credible-supporting-evidence requirement of § 3.304(f) renders the regulation invalid. *See* Appellant's Br. at 15-22; Appellant's Supplemental (Supp.) Br. at 2-12.

In this regard, the Federal Circuit recently issued an opinion upholding the validity of § 3.304(f) and denying a petition for review of that regulation insofar as § 3.304(f) provides that evidence other than the veteran's service records may corroborate that veteran's account of the occurrence of an in-service stressor in PTSD-service-connection claims based upon a personal assault. *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, __ F.3d __, __, No. 02-7346, slip op. at 1 (Fed. Cir. May 14, 2003); *see* 38 C.F.R. § 3.304(f)(3) (2002); Post-Traumatic Stress Disorder Claims Based on Personal Assault, 67 Fed. Reg. 10,330, 10,330, 10,332 (March 7, 2002). In addressing the challenge to § 3.304(f), the Federal Circuit described the petitioner's credible-supporting-evidence argument as being that non-combat-related-PTSD claimants must satisfy an evidentiary requirement not imposed upon combat-related-PTSD claimants and that additional evidentiary requirement is not consistent with 38 U.S.C. §§ 1154(a) and 5107(b). *See Nat'l Org. of Veterans' Advocates, Inc.*, __ F.3d at __, slip op. at 7-8, 9.

Here, the appellant argues that the § 3.304(f) credible-supporting-evidence requirement impermissibly places a higher evidentiary burden for establishing entitlement to VA disability benefits on claimants with PTSD than on claimants with other disabilities and that any such higher evidentiary burden conflicts with governing law, specifically sections 1154(a) and 5107(b). Appellant's Supp. Br. at 2-5, 8-12. This argument, not having been raised to the Federal Circuit, will be addressed by the Court. For the reasons that follow, the Court will uphold the validity of the contested regulatory requirement as applied to all PTSD claims.

With respect to the authority and duties of the Secretary, 38 U.S.C. § 501 provides in pertinent part:

> (a) [t]he Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department [of Veterans Affairs] and are consistent with those laws, including—

8

(1) regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws.

38 U.S.C. § 501(a)(1).  The Secretary contends that, pursuant to section 501, he has promulgated 38 C.F.R. § 3.304(f), which provides in pertinent part that

[s]ervice connection for [PTSD] requires medical evidence diagnosing the condition in accordance with [38 C.F.R.] § 4.125(a) . . . ; a link, established by medical evidence, between current symptoms and an in-service stressor; and *credible supporting evidence* that the claimed in-service stressor occurred.  Although service connection may be established based on other in-service stressors, the following provisions apply for specified in-service stressors as set forth below:
(1) If the evidence establishes that the veteran engaged in combat with the enemy and the claimed stressor is related to that combat, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor.

38 C.F.R. § 3.304(f) (2002) (emphasis added).  (Although § 3.304(f) was amended during the pendency of this claim, the credible-supporting-evidence requirement at issue here has remained unchanged.  *See* Post-Traumatic Stress Disorder Claims Based on Personal Assault, 67 Fed. Reg. at 10,332; Direct Service Connection (Post-Traumatic Stress Disorder), 64 Fed. Reg. 32,807, 32,808 (June 18, 1999).)  Specifically and as is relevant here, the Secretary contends that the § 3.304(f) requirement of "credible supporting evidence" explicates the "nature and extent of proof and evidence" necessary to establish the in-service occurrence of a stressor(s) and that as such the regulation is a valid exercise of his rulemaking authority under section 501.  Secretary's Supp. Br. at 2, 7, 11-12, 36.

"The starting point in interpreting a statute is its language."  *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993).  When this Court reviews de novo the Secretary's interpretation of a statute, the first question is always "whether Congress has directly spoken to the precise question at issue."  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984); *see* 38 U.S.C. § 7261(a)(1) (scope of review); *Trilles v. West*, 13 Vet.App. 314, 321 (2000) (en banc).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842-43.

9

If, however, a statute is silent as to the matter at issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. "'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'" *Chevron*, 467 U.S. at 843 (quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)).

In section 501(a)(1), Congress clearly gave the Secretary the explicit authority to promulgate regulations dealing with the "nature and extent of proof and evidence" necessary to establish, inter alia, service connection for PTSD. The question for the Court, therefore, is whether the Secretary's interpretation of his explicitly delegated authority as expressed in § 3.304(f), which interpretation generally is given controlling weight, is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 38 U.S.C. § 7261(a)(3)(A); *Chevron*, 467 U.S. at 844.

With respect to the appellant's contention that § 3.304(f) is invalid because its credible-supporting-evidence requirement places a higher evidentiary burden for establishing entitlement to disability benefits on PTSD claimants than on other VA benefits claimants and that such differing evidentiary burdens are disallowed, that argument is unavailing. In this regard, for over eighty-five years, the Secretary (or his positional predecessors) has been empowered to promulgate regulations governing the "nature and extent of the proofs and evidence" necessary to establish entitlement to VA disability benefits. *See* An Act of October 6, 1917, ch. 105, art. I, sec. 2, § 13, 40 Stat. 398, 399; *see also* 38 U.S.C. § 210(c) (1958); World War Veterans' Act, 1924, ch. 320, title I, sec. 5, 43 Stat. 607, 608-09. Pursuant to that authorization, the Secretary promulgated several regulations dealing with various evidentiary burdens, as to both VA benefits in general and claims based on specific disabilities, that must be satisfied in order for a claimant to establish benefit entitlement. *See* 38 C.F.R. §§ 3.157(b)(2) (1964) (requiring, in certain increased-rating and reopening cases, that evidence from private physician or layman be verified by official examination prior to award of benefits), 3.203 (1964) (requiring, in certain instances, service department verification of service), 3.311b(a)(3)(ii) (1986) (in claim based on exposure to ionizing radiation, detailing when dose estimate is considered to be from "'credible source'"), 3.350(a)(5) (1964) (for special monthly compensation rating for deafness, examination must be held at VA authorized

audiology clinic), 3.374(c) (1964) (requiring confirmation of private physician's diagnosis of active pulmonary tuberculosis).

Subsequently, in 1991, Congress reenacted without substantive change the provision authorizing the Secretary to promulgate evidentiary regulations. *See* Department of Veterans Affairs Codification Act, Pub. L. No. 102-83, sec. 2(a), § 501, 105 Stat. 378, 386 (1991). At the time of that reenactment, VA utilized, inter alia, the evidentiary regulations cited in the preceding paragraph. *See* 38 C.F.R. §§ 3.157(b)(2), 3.203(c), 3.311b(a)(3)(ii), 3.350(a)(5), 3.374(c) (1990). There is, however, no indication that Congress disagreed with or disapproved of the Secretary's interpretation of his statutory authority, in that Congress took no action, at that time, to discontinue or alter the Secretary's interpretive actions. *See Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 783 n.15 (1985) (Congress is presumed to be aware of administrative or judicial interpretation of statute and to adopt that interpretation when it reenacts statute without change). In this regard, when Congress desired to alter the Secretary's evidentiary regulations, Congress did so explicitly. Specifically, in 1994, Congress enacted 38 U.S.C. § 5125 to eliminate the 38 C.F.R. § 3.157(b)(2) requirement that, prior to an award of VA benefits, a private physician's medical-examination report be verified by an official VA examination report. *See* Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 301(b), 108 Stat. 4645, 4658 (VBIA); *see also* 38 U.S.C. § 5125; 38 C.F.R. § 3.157(b)(2) (1995).

Here, the evidentiary regulation at issue, 38 C.F.R. § 3.304(f), was promulgated in 1993. *See* Direct Service Connection (Post-traumatic Stress Disorder), 58 Fed. Reg. 29,109, 29,109-10 (May 19, 1993) (stating that VA was amending its adjudication regulations to establish extent of evidence required to establish service connection for PTSD; noting that, when comments were invited on proposed regulation, American Psychiatric Association representative endorsed regulation and stated that regulation would ensure that VA "d[id] not require unreasonable proof of inservice stressors in PTSD claims") (first codified at 38 C.F.R. § 3.304(f) (1993)). In promulgating this regulation, the Secretary explicitly relied upon section 501(a)(1) when setting forth the "nature and extent of proof and evidence" necessary to establish service connection for PTSD, specifically "credible supporting evidence" of the claimed in-service stressor. *See* Direct Service Connection (Post-traumatic Stress Disorder), 58 Fed. Reg. at 29,110. In the ten years since the Secretary promulgated § 3.304(f), there

has been no indication that Congress disapproves of or disagrees with the VA evidentiary regulation and its credible-supporting-evidence requirement (as contrasted with Congress' action, noted above, regarding § 3.157(b)(2)). Moreover, if the appellant's argument that all evidentiary burdens must be equivalent were accepted, VA would be prohibited from promulgating any specific evidentiary requirements for establishing entitlement to benefits. Such a prohibition would be contrary to both Congress' explicit delegation to the Secretary in section 501(a)(1) of evidentiary-rulemaking authority and to Congress', at a minimum, implicit approval of 38 C.F.R. § 3.304(f)'s credible-supporting-evidence requirement and other similar evidentiary requirements.

Further, the appellant's contention that the "credible supporting evidence" requirement of 38 C.F.R. § 3.304(f) disallows consideration of lay evidence and therefore conflicts with 38 U.S.C. § 1154(a) is also unavailing. *See* 38 U.S.C. § 1154(a) (service-connection regulations shall include additional provisions requiring "due consideration . . . [of] the places, types, and circumstances of such veteran's service as shown by . . . all pertinent medical and lay evidence"). In this regard, section 1154(a) does not mandate that every piece of evidence regardless of its nature or probative value must be accepted as sufficient to establish the matter at issue. *Cf.* 38 U.S.C. § 1154(b) (in case of combat veteran, Secretary *shall* accept, inter alia, lay evidence of in-service incurrence or aggravation, if consistent with circumstances, conditions, or hardships of such service). Contrary to the appellant's argument, pursuant to section 1154(a), VA does "consider[]" a claimant's lay statements regarding a claimed stressor in that such statements are utilized to identify and then trigger research as to the claimed in-service stressor(s) being put forth by the claimant seeking service connection for PTSD. In addition, § 3.304(f) does not necessarily demand the submission of official documentary evidence to satisfy the credible-supporting-evidence requirement. Indeed, a lay statement from someone other than the claimant may provide the necessary "credible supporting evidence." *See YR v. West*, 11 Vet.App. 393, 397-99 (1998) (in PTSD case, "'credible supporting evidence'" is not limited to service department records, rather it can be from any source; holding that Board's failure to discuss appellant's sister's written statement was prejudicial error); *see also Nat'l Org. of Veterans' Advocates, Inc.*, __ F.3d at __, slip op. at 8-9. Such treatment of lay evidence from either a claimant or someone other than a claimant also defeats the appellant's argument that § 3.304(f) conflicts with the requirement of section 5107(b) that "all information and

lay . . . evidence" be "consider[ed]." 38 U.S.C. § 5107(b); *see Nat'l Org. of Veterans' Advocates, Inc.*, __ F.3d at __, slip op. at 10-11.

Moreover, contrary to the appellant's contention, § 3.304(f)'s credible-supporting-evidence requirement does not conflict with 38 U.S.C. § 5107(b) and that section's benefit-of-the-doubt rule. *See* 38 U.S.C. § 5107(b) (when there is approximate balance of positive and negative evidence regarding any issue material to determination of matter, benefit of doubt goes to claimant); *Gilbert*, 1 Vet.App. at 53-56 (discussing equipoise standard). In this regard, if Congress had intended the section 5107(b) equipoise standard to be exclusive in any evidentiary determination, there would have been no need for Congress to enact section 501(a)(1). *See Meeks v. West*, 12 Vet.App. 352, 354 (1999) (each part or section of statute should be construed in connection with every other part or section so as to produce harmonious whole), *aff'd*, 216 F.3d 1363 (Fed. Cir. 2000). Further, the benefit-of-the-doubt rule would come into play when the Board considers whether the evidence offered to corroborate a claimant's lay statements as to claimed stressors was sufficient. *See Gaines*, 11 Vet.App. at 359; *see also Nat'l Org. of Veterans' Advocates, Inc.*, __ F.3d at __, slip op. at 10-11.

For the reasons discussed above, the Court thus concludes that § 3.304(f)'s credible-supporting-evidence requirement is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Court therefore holds that the 38 C.F.R. § 3.304(f) requirement of "credible supporting evidence" of the claimed in-service stressor is a valid exercise by the Secretary of his section 501(a)(1) authority to promulgate regulations as to the "nature and extent of proof and evidence" necessary to establish service connection for PTSD.

## III. Conclusion

Based upon the foregoing analysis, the record on appeal, the parties' pleadings, and oral argument, the January 29, 1999, Board decision is VACATED and the matter is REMANDED for readjudication consistent with this opinion. On remand, the appellant is free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky*, *supra*. *See Kay*, *supra*. The Board shall proceed expeditiously, in accordance with section 302 of the VBIA, 108 Stat. at 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court).

STEINBERG, *Judge*, concurring in part: I join in part I, part II.A., the first three paragraphs of part II.B., the last sentence (except for "therefore") of part II.C., and part III. of the Court's opinion.