KASOLD, Judge,
dissenting:
I respectfully dissent from the denial of en banc consideration in this case. The appellant seeks en banc review so that the Court might address (1) our application of the “clearly erroneous” standard of review; (2) the benefit-of-the-doubt rule; and (3) the doctrine that once this Court finds an issue warranting remand, we generally will not address other issues (aka the Best rule). I believe en banc review is warranted because these issues are of exceptional importance to our judicial review and there is a lack of uniformity or clarity in our caselaw in each of these areas. See U.S. Vet.App. R. 35(c) (motions for full-Court decision will ordinarily not be granted “unless such action is necessary to secure or maintain uniformity of the Court’s decisions or to resolve a question of exceptional importance”).
A “Clearly Erroneous” Standard of Review
The meaning of the term “clearly erroneous” was first set out by this Court in Gilbert v. Derwinski, 1 Vet.App. 49, 52-53 (1990). Gilbert cites to United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948), for the definition of this term: “A finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Gilbert then cites to Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), to illustrate when a court might not have a firm conviction:
This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. “In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo.” Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous. United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 94 L.Ed. 150 (1949); see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).
Gilbert, 1 Vet.App. at 52 (quoting Anderson, supra).
Although Gilbert favorably cited to the Supreme Court’s definitions of the “clearly erroneous” standard, Gilbert subsequently stated that “if there is a plausible basis in the record for the factual determinations *50 of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them.” Id. at 53. It is this standard that is primarily used throughout our cases. Whether or not the Gilbert standard was designed to be different from that enunciated by the Supreme Court, the fact remains it is. The Supreme Court stated that a “finding is ‘clearly erroneous’ when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Gypsum, 333 U.S. at 395, 68 S.Ct. 525 (emphasis added), quoted favorably in Concrete Pipe & Prods. of Cal., Inc., v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622-23, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993). Thus, under the standard established by the Supreme Court, even when there is evidence to support a lower tribunal’s finding, the reviewing court can reverse it if it has a definite and firm conviction that a mistake has been made, based on the entire record. By contrast, under the Gilbert standard, if there is a plausible basis in the record for the decision below, it cannot be overturned.
The Supreme Court also stated that a decision below was not clearly erroneous when that decision provided an “account of the evidence [that] is plausible in light of the record viewed in its entirety.” Anderson, supra (emphasis added). This requires both (1) an explanation of the evidence and (2) that the explanation be plausible “in light of the record viewed in its entirety.” Id. Thus, a plausible basis in the record is not enough to preclude a reversal of a finding; there must be an explanation that is plausible “in light of the record viewed in its entirety.” Of course, if there is a plausible explanation in light of the entire record, the Court cannot substitute its own, alternate plausible basis for that of the lower tribunals. Id.; see also Yellow Cab, 338 U.S. at 342, 70 S.Ct. 177.
Although the Gilbert standard is generally used in this Court, it is not uniformly applied. There are a number of cases applying an even stricter, dual-based definition of the “clearly erroneous” standard that permits reversal only when “there is absolutely no plausible basis” for the BVA decision and where that decision “is clearly erroneous in light of the uncontroverted evidence.” See, e.g., Kay v. Principi, 16 Vet.App. 529, 533 (2002); Shoffner v. Principi 16 Vet.App. 208, 212 (2002); Pentecost v. Principi, 16 Vet.App. 124, 129 (2002).
The genesis and development of this two-pronged standard is a classic example of the evolution of case meanings over time. The phrase “absolutely no plausible basis” was first used in our cases in Hersey v. Derwinski 2 Vet.App. 91, 95 (1992). After restating the Supreme Court’s definitions of the “clearly erroneous” standard, as well as noting it as the Gilbert standard,[1] the Hersey Court then noted that in the case before it “[t]here is absolutely no plausible basis for the BVA’s statement” and then found that the BVA decision “was clearly erroneous in light of the uncontro-verted evidence in appellant’s favor.” Id. at 95. The “absolutely no plausible basis” and the “uncontroverted evidence” comments were not intended to be a standard of review. Rather, they were the Court’s view of the evidence before it; i.e., there was not only no plausible basis in the record as a whole for the Board’s finding, *51 but there was also absolutely no basis for it given the uncontroverted evidence against it. For whatever reasons, numerous single-judge decisions began citing Kersey for this two pronged, stricter proposition. See, e.g., Abrams v. Brown, No. 92-435, 1993 WL 382114 (Vet.App. Sept.22, 1993); Moon v. Brown, No. 91-2044, 1994 WL 44139 (Vet.App. Feb.01, 1994). This proposition later made its way into the panel decisions noted above (Pentecost, Shoffner, and Kay, all supra).
I suspect that the Gilbert standard and the evolutionary Kersey standard were both unintentional deviations from the Supreme Court’s definition of “clearly erroneous.” Regardless, this is an exceptionally important issue on which we do not have uniformity within the Court, and therefore en banc review is warranted.[2]

B. The Benefit of the Doubt

Section 5107(b) of title 38, U.S.Code, requires the Secretary to consider all the information and evidence in a veteran’s case and, if “there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter,” to give the benefit of the doubt to the veteran/claimant. This Court established early on that the Secretary’s application of the benefit-of-the-doubt rule, as finally applied by the Board, would be reviewed for whether it was “ ‘arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.’ ” Gilbert, 1 Vet.App. at 57-58.
What was once well settled, however, is now open to question as a result of the panel decisions in Roberson v. Principi, 17 Vet.App. 135, 146 (2003), and Mariano v. Principi, 17 Vet.App. 305, 313 (2003), which state the standard of review of the benefit-of-the-doubt rule as “clearly erroneous.” Neither case cites a basis for changing the standard of review, with Mariano simply citing Roberson. See Mariano, supra. Indeed, neither case cites Gilbert. Moreover, Roberson gives the impression that “clearly erroneous” was always the standard of review for the Secretary’s application of the benefit-of-the-doubt rule. Id. There is a conflict in our caselaw on this significant issue and it should be resolved en banc.

C. The Best Doctrine

The panel decision in Best v. Principi, 15 Vet.App. 18, 19 (2001) (per curiam order), proclaimed that “[f]rom the outset, it has been the practice of this Court that when a remand is ordered because of an undoubted error that requires such a remedy, the Court will not, as a general rule, address other putative errors raised by the appellant.” See also Mahl v. Principi, 15 Vet.App. 37 (2001) (per curiam order) (acknowledging departures from the Best doctrine, but maintaining they are the exception rather than the rule). In support of its proposition, Best cites directly to Dunn v. West, 11 Vet.App. 462, 467 (1998), and further refers the reader to Aronson v. Brown, 7 Vet.App. 153, 155 (1994), and Mokal v. Derwinski, 1 Vet.App. 12 (1990). A closer look, however, finds that none of these cases supports the broad proposition announced in Best. Indeed, Dunn supports a much narrower proposition and almost inverse general rule.
Dunn fully addressed the appellant’s assertion on appeal that the Board had erred *52 and affirmed the Board on three claims and remanded the fourth. Dunn, 11 Vet.App. at 467-68. The fourth claim was remanded because the Court found that the Board had failed to actually obtain records that appeared to be relevant to that claim. These records were deemed to be constructively before the Board, and therefore it was error not to consider them; remand was appropriate. Id. Because the records would have to be obtained and considered on remand, the additional assertions that the Secretary failed in his duty to assist by failing to secure the records or that the veteran was denied due process by the Secretary’s failing to secure those records were rendered moot. Nothing in Dunn stands for the proposition that this Court had a practice of not addressing other claims simply because one claim warranted a remand; Dunn suggests only that those issues mooted by the remand are not to be considered.
It also seems that Best actually turned the Dunn approach on its head, with its “recognition” of a general rule that if a finding or holding on one claim or issue causes remand of a case, none of the other claims or issues generally should be decided at that time by the Court. Although Dunn refused to address additional issues that were mooted by decision on one issue, application of the Best rule does not depend on mooting an issue; it simply remands all claims and issues in the ease to the Board where they all can be reconsidered. See Fletcher v. Derwinski, 1 Vet.App. 394, 397 (1991) (“A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the [Board] will reexamine the evidence of record, seek any other evidence the Board feels is' necessary, and issue a timely, well-supported decision in this case.”). •
The other cases relied on by Best similarly do not support the general rule as announced in Best. Aronson stands for the sole proposition that when a claim is rendered moot, the Court no longer has jurisdiction over that claim or any matters appurtenant to that claim. Aronson, 7 Vet.App. at 155-56. Mokal stands for the proposition that this Court has adopted the case-or-controversy jurisdictional restraints imposed by Article III of the U.S. Constitution. Mokal, 1 Vet.App. at 15. Both cases support the general Dunn approach, i.e., not addressing issues mooted by a remand, but not the broad rule enunciated in Best that if one issue warrants remand none of the others generally should be addressed.
Best further cites to a number of other courts that “regularly decline to address the remaining allegations of error if the court orders a remand and a new trial based on any one allegation of error.” Best, 15 Vet.App. at 19. Reliance on these cases for adopting the broad principle enunciated in Best is misplaced. For one, a new trial is far different than the remand of a case from this Court to the Board. In a new trial, the entire process is redone, whereas during new proceedings after a remand from this Court, the record below remains intact; it can be augmented, but it is not redone. Moreover, with the exception of the issue on which the remand was based and those, as in Dunn, that were mooted by the remand, I fail to see the basis for believing that the Board will render a different decision on any remaining issues. This leaves the veteran with the prospect that his case will be remanded as many times as he has separate claims or independent issues, before he can get a final decision. See Brambley v. Principi, 17 Vet.App. 20, 25-28 (2003) (Steinberg, J., concurring). Unlike the moot issues in Dunn, the issues and claims remanded *53 under the Best construct remain very-much alive.
Finally, in addition to being, at best, a stretch from the Dunn case, the Best principle is applied inconsistently and without uniformity in the Court. Compare, e.g., Best and Mahl, both supra, with Pelegrini v. Principi, 17 Vet.App. 412, 423-24 (2004) (remanding for compliance with 38 U.S.C. § 5103(a) but also addressing another argument raised in case), and Moran v. Principi, 17 Vet.App. 149, 155-56 (2003) (remanding for inadequate reasons or bases, but also addressing appellant’s arguments regarding 38 C.F.R. § 3.304(f)); see also Brambley, supra (Steinberg, J., concurring) (enumerating other remandable errors, outside of those addressed by majority option, that without having been so addressed might reoccur on readjudication). This issue is important and there is a lack of uniformity in this area within our cases, both warranting clarification by the en banc Court.[3]
For the foregoing reasons, I respectfully dissent.

. The Hersey court made no mention of the standard actually enunciated in Gilbert and applied in most of our cases, i.e., "if there is a plausible basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them,” Gilbert v. Derwinski, 1 Vet.App. 49, 53 (1990). See Hersey v. Derwinski, 2 Vet.App. 91, 93-95 (1992).

. Although I believe the differences between the Gilbert and Hersey standards of review are significant, to the extent some view them as subtle this should not preclude review. The Supreme Court noted there was a subtle difference between the "substantial evidence” and the "clearly erroneous” standards of review, but still found it important to apply the correct standard. Dickinson v. Zurko, 527 U.S. 150, 162-63, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999).

. See also Mahl v. Principi, 15 Vet.App. 37, 40-47 (2001) (per curiam order) (Steinberg, J., dissenting) (noting additional infirmities in the Best rule).