Raymond C. TAYLOR, Appellant,

v.

Robert A. McDONALD, Secretary of
Veterans Affairs, Appellee.

No. 13–0567.

United States Court of Appeals
for Veterans Claims.

Nov. 24, 2014.

Eric A. Gang and Ryan J. Casson, both of Andover, New Jersey, were on the briefs for the appellant.

Will Gunn, General Counsel, Mary Ann Flynn, Assistant General Counsel, Rebecca A. Baird, Deputy Assistant General Counsel, and Jessica M. Swartz, Appellant Attorney, were on the brief for the appellee.

Before LANCE, DAVIS, and PIETSCH, Judges.

PIETSCH, Judge:

Raymond C. Taylor, who served in the Korean demilitarized zone (DMZ) during 1968 and 1969, appeals through counsel a December 10, 2012, Board of Veterans' Appeals (Board) decision that denied entitlement to service connection for non-Hodgkin's lymphoma (lymphoma) based on a finding that the evidence was sufficient to rebut, under 38 C.F.R. § 3.307(d), a presumption of service connection based on exposure to herbicides. He argues that § 3.307(d) is invalid as applied to veterans with qualifying service in the Korean DMZ and therefore that the presumption of service connection for his non-Hodgkin's lym-

phoma, based on exposure to herbicides in service, is unrebuttable. He argues alternatively that, even if the rebuttal regulation is valid, the Board erred by relying on an inadequate August 2012 VA medical opinion as sufficient evidence to rebut the presumption.

For the reasons that follow, we hold that the application of § 3.307(d) to veterans who were exposed to herbicides during active service in the Korean DMZ is a valid exercise of the Secretary's authority to promulgate evidentiary regulations under 38 U.S.C. § 501(a)(1). However, we agree with the appellant that the Board erred when it determined that the August 2012 VA medical opinion was sufficient to rebut the presumption of service connection, as it failed to provide an adequate statement of reasons or bases for that conclusion. We will, therefore, vacate the Board's decision and remand the matter for readjudication consistent with this decision.

## I. BACKGROUND

The following summary of the claim history most relevant to the issues on appeal is reflected in the record of proceedings before the Court.

The appellant served on active duty with the U.S. Army from September 1967 to May 1969. Record (R.) at 486. His service included 13 months in Korea. R. at 559.

VA medical notes from July 2008 indicate that the appellant had been previously diagnosed with hepatitis B and hepatitis C. R. at 362–63. In February 2009, a bone marrow biopsy was evaluated as "suspicious for Hepatitis C-related B-cell lymphoma." R. at 234. A July 2009 medical note indicates a history of "hepatitis C related B cell lymphoma." R. at 220. An August 2009 medical note indicates "Non-

Hodgkin's B-cell lymphoma secondary to Hep C." R. at 190.

In August 2009, the appellant filed a claim for entitlement to service connection for non-Hodgkin's lymphoma, due to Agent Orange (AO) exposure in service. R. at 288. The claim was denied by the VA regional office (RO) in September 2009, due to the lack of evidence that the appellant served in Vietnam or was otherwise exposed to AO in service. R. at 272. The appellant submitted a timely Notice of Disagreement, claiming that he was exposed to AO while serving in Korea in 1968. R. at 251.

In June 2010, the RO issued a Statement of the Case maintaining the denial of the appellant's claim because service records did not show that the appellant was exposed to herbicides during active duty including service in Korea. R. at 133–34. The appellant perfected his appeal to the Board. R. at 113.

In June 2012, the Board issued a request for a VA medical specialist's opinion based on a finding that the evidence indicated that the appellant had been exposed to herbicides "while working in and around the demilitarized zone (DMZ) in Korea." R. at 83–84. The Board noted that the appellant's in-service exposure created a presumption of service connection for his lymphoma unless there is affirmative evidence to the contrary. The Board further noted that some VA treatment records attributed the lymphoma to the appellant's hepatitis C and therefore requested that an oncologist "indicate whether the evidence in its entirety supports the conclusion that the Veteran's non-Hodgkin's lymphoma was not incurred in, or otherwise caused by, his military service." R. at 84.

A VA oncologist responded in August 2012, opining that "the absence of past studies would make determination of the etiology of his disorder impossible." R. at

80. The doctor further opined: "I believe that the evidence suggests that the hepatitis C infection led to the development of the lymphoma." R. at 81.

In December 2012, the Board issued the decision here on appeal. R. at 2–14. The Board found that the appellant was exposed to AO in service. R. at 6. The Board further found that non-Hodgkin's lymphoma is a disease for which service connection is presumed based on exposure to an herbicide agent. *Id.; see* 38 C.F.R. § 3.309(e) (2014). However, the Board found that the August 2012 VA medical opinion confirmed that it was likely that the appellant's intervening hepatitis C infection led to the development of lymphoma and that this was sufficient evidence to rebut the presumption of service connection. R. at 6–9; *see* 38 C.F.R. § 3.307(d) (2014). The Board considered the positive medical nexus opinions submitted by the appellant, but found the August 2012 VA medical opinion to be more probative. R. at 8.

The Board also found that the evidence was insufficient to establish a nexus to herbicide exposure on a direct basis, in the absence of an applicable presumption. R. at 9. The Board therefore denied the claim, finding that "the most probative evidence indicates that the Veteran's non-Hodgkin's lymphoma is the result of [hepatitis C] and not the result of herbicide exposure in service, and the evidence does not suggest that the non-Hodgkin's lymphoma is otherwise related to service (either through date of onset or causation)." *Id.*

Before the Court, the appellant argues that the Board was statutorily precluded from rebutting the regulatory presumption of service connection applicable to his lymphoma. Appellant's Br. at 20–25. He contends that VA's regulations providing for rebuttal of the presumption are ultra vires as applied to veterans like himself who are entitled to a presumption of service connection based on their service in the Korean DMZ. In the alternative, he argues that the Board erred in finding the August 2012 medical examiner's opinion adequate and that it constituted sufficient evidence to rebut the presumption of service connection. *Id.* at 8–20.

The Secretary disputes the appellant's arguments, arguing that the Board's decision should be affirmed. He contends that VA regulations providing for rebuttal of the presumption of service connection as applied to the appellant are a valid exercise of the Secretary's general rulemaking authority under 38 U.S.C. § 501(a). He further contends that the Board did not err in relying on the August 2012 VA medical opinion to rebut the presumption.

## II. ANALYSIS

### A. Validity of the Challenged Regulation

The Board found that the appellant was entitled to a presumption under 38 C.F.R. § 3.309(e) that his non-Hodgkin's lymphoma was caused by exposure to herbicides during his service in the Korean DMZ, but that the record evidence was sufficient to rebut this presumption under § 3.307(d). Section 3.309(e) provides that specified diseases associated with exposure to herbicides, including non-Hodgkin's lymphoma, "shall be service connected if the requirements of § 3.307(a)(6) are met even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of § 3.307(d) are also satisfied." *See also* 38 C.F.R. § 3.307(a) (2014) (providing that diseases listed in § 3.309 "will be considered to have been incurred or aggravated by service under the circumstances outlined in this section"). Section 3.307(a)(6) requires that a claimant's lymphoma manifest to a degree of at least 10%, which is not disput-

ed here. Section 3.307(d) provides for rebuttal of the presumption of service connection by evidence that "in sound medical reasoning and in the consideration of all evidence of record, support[s] a conclusion that the disease was not incurred in service." 38 C.F.R. § 3.307(d). The Board found that the August 2012 VA medical opinion was sufficient to rebut the presumption under that standard.

The appellant argues that VA did not have "the authority to promulgate a rebuttal provision as to Korean DMZ herbicide claimants," because such claimants are not referenced in 38 U.S.C. § 1113, "the specific authority for the Secretary to promulgate presumption-rebuttal regulations based on geographic locale and disability type." Appellant's Reply Br. at 10; see also Appellant's Br. at 21–25. He therefore contends that "VA's promulgation of § 3.307(a)(6)(iv) and 3.307(d), to create a rebuttal framework for Korean DMZ claimants with presumed herbicide exposure, was ultra vires, or constituted administrative action beyond and outside of the Secretary's express or implied delegated authority in the pertinent enabling statute, § 1113." Appellant's Memorandum of Law in Response to Briefing Order at 2. He further argues that VA's general rulemaking authority under section 501(a) is trumped by the specific rebuttal authority limitations contained in section 1113.

We are not persuaded by the appellant's argument. As an initial matter, the appellant's assertion that VA created a rebuttal framework for Korean DMZ veterans with presumed herbicide exposure by promulgating § 3.307(a)(6)(iv) and 3.307(d) is not entirely accurate, as he confuses and con-

flates the two rules at issue. Section 3.307(a)(6)(iv), promulgated by VA in 2011, provides for a presumption of *exposure* to herbicides for qualifying veterans who served in the Korean DMZ; it does not establish a presumption of service connection.[1] *See* 76 Fed.Reg. 4245 (Jan. 25, 2011) (adopting § 3.307(a)(6)(iv) as a final rule). In contrast, VA established a presumption of *service connection* for non-Hodgkin's lymphoma in 1994 when it extended § 3.309(e) beyond veterans who served in Vietnam to include all other veterans exposed to herbicides during active service. 59 Fed.Reg. 5106 (Feb. 3, 1994).

In 1993, VA promulgated §§ 3.309(e) and 3.307(a)(6), providing for the presumption of service connection due to herbicide exposure during active service, under the authority of the Agent Orange Act of 1991, Pub.L. No. 102–4, § 2, 105 Stat. 11 (1991). *See* 58 Fed.Reg. 29,107 (May 19, 1993). The Act established 38 U.S.C. § 316 (now section 1116), providing that veterans with qualifying service in Vietnam are entitled to a presumption of exposure to herbicides and a presumption of service connection for specified diseases, including diseases subsequently identified by regulation as having a relation to exposure to herbicide agents. Pub.L. No. 102–4 § 2.

VA initially limited the § 3.309(e) presumption of service connection to Vietnam veterans, *see* 38 C.F.R. § 3.309(e) (1993); 58 Fed.Reg. at 29,109, but in 1994 amended that provision to make the presumption applicable to other veterans who were exposed to herbicides during active service, including those who served in the Korean DMZ, *see* 59 Fed.Reg. 5106 (Feb. 3, 1994); *see also* 58 Fed.Reg. 50,528, 50,529 (Sept.

---

1. In addition, it appears that the Board found that the appellant was *actually* exposed to herbicides, not presumptively exposed under the regulation. R. at 6 (finding that the appellant's "unit was not one that the Depart-
ment of Defense had determined operated in or near the Korean DMZ" and relying on lay evidence to conclude that "the [appellant] was exposed to herbicides, such as Agent Orange, during his military service").

28, 1993) (proposed rule explaining the change); 66 Fed.Reg. 23,166, 23,166 (May 8, 2001) (stating that the § 3.309(e) presumption applies to veterans who did not serve in Vietnam if exposure to herbicides occurred during active military service). VA thereby reduced the evidentiary burden on non-Vietnam veterans, including those with service in the Korean DMZ, to establish service connection for specified diseases based on exposure to herbicides. Thus, even though the appellant did not serve in Vietnam, the Board's finding that he was exposed to herbicides in service entitled him to a presumption of service connection under § 3.309(e) for his non-Hodgkin's lymphoma.

Similarly, contrary to the appellant's contention, VA's promulgation of § 3.307(d) did not create a rebuttal framework specifically for Korean DMZ claimants with presumed herbicide exposure. Rather, that provision applies to *any* claimant with herbicide exposure—presumed or actual—and already existed when VA created the presumption of herbicide exposure for qualifying Korean DMZ veterans in 2011. *See* 26 Fed.Reg. 1561 (Feb. 24, 1961) (promulgating 3.307(d)). In other words, § 3.309(e) provided from its outset that its presumption of service connection was rebuttable under § 3.307(d), and VA's expansion of § 3.309(e) to include *all* herbicide-exposed veterans, such as the appellant (who did not serve in Vietnam), made the presumption rebuttable as to the newly covered class by not excepting them from the § 3.307(d) rebuttal standard. 59 Fed.Reg. 5106 (February 1994).

Nevertheless, despite the appellant's apparent confusion regarding § 3.309(e), the gravamen of his argument survives, because he asserts that section 1113 generally prohibits VA from rebutting the presumption of service connection with re-spect to Korean DMZ veterans, rendering the presumption absolute. We find that argument unconvincing.

Section 1113 provides as follows:

Where there is affirmative evidence to the contrary, or evidence to establish that an intercurrent injury or disease which is a recognized cause of any of the diseases or disabilities within the purview of section 1112, 1116, 1117, or 1118 of this title, has been suffered between the date of separation from service and the onset of any such diseases or disabilities, or the disability is due to the veteran's own willful misconduct, service connection pursuant to section 1112, 1116, or 1118 of this title, or payments of compensation pursuant to section 1117 of this title, will not be in order.

38 U.S.C. § 1113. This provision provides for the rebuttal of the presumption of service connection established in sections 1112, 1116, 1117, and 1118 for various medical conditions contracted by a veteran with certain types of service, including, but not limited to, a veteran who was a prisoner of war or exposed to radiation (section 1112); was exposed to herbicides during qualifying service in Vietnam (section 1116); or had qualifying service in the Persian Gulf War (sections 1117 and 1118). *See* 38 U.S.C. §§ 1112, 1116–1118.

The appellant is correct that section 1113 does not reference the service-connection presumption applicable to his condition. However, VA did not rely solely on section 1113 when it promulgated § 3.309(e); it also designated section 501(a) as the authority for that rule. *See* 58 Fed.Reg. at 29,109. Section 501(a) provides the Secretary with the authority to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws, including ... regulations with respect to the

nature and extent of proof of evidence ... in order to establish the right to benefits under such laws." 38 U.S.C. § 501(a)(1). As an evidentiary regulation, § 3.309(e) clearly falls under the terms of section 501.

The question presented to the Court is whether the part of § 3.309(e) providing for the rebuttal of the presumption of service connection applicable to the appellant's non-Hodgkin's lymphoma conflicts with section 1113, rendering that part of the regulation contrary to law. We hold that it does not. Section 1113 does not purport to limit the Secretary's authority; rather, it provides for the potential rebuttal of the specific presumptions of service connection established in sections 1112 and 1116–1118. It is, in effect, silent with respect to other presumptions of service connection created by the Secretary under the general authority granted by section 501(a). It therefore does not conflict with, or limit, the Secretary's authority under section 501(a) to establish evidentiary rules, including service connection presumptions and the standards for their rebuttal, in circumstances not contemplated therein. Indeed, the appellant wishes to rely to his benefit on the Secretary's section 501(a) authority to extend the presumption of herbicide-related service connection beyond the parameters set forth in section 1116 (which is applicable only to Vietnam veterans), while at the same time arguing that those same parameters (as referenced in section 1113) limit the Secretary's section 501(a) authority regarding the rebuttal of that presumption. However, those issues are two sides of the same coin: the criteria to *rebut* the presumption of service connection are part and parcel of the "nature and extent of proof and evidence" that the Secretary has determined is required for veterans who did not serve in Vietnam to satisfy the favorable evidentiary burden set by § 3.309(e)—a bar lower than that provided by statute.

■ We therefore hold that § 3.309(e), insofar as it establishes a rebuttable presumption of service connection for veterans exposed to herbicides in service outside of Vietnam, does not conflict with section 1113 and represents a reasonable interpretation by VA of its authority under sections 501, 1113, and 1116 that is not arbitrary and capricious. *See Mayo Foundation for Medical Educ. and Research v. United States*, 562 U.S. 44, 131 S.Ct. 704, 711, 178 L.Ed.2d 588 (2011) (holding that, under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), courts "may not disturb an agency rule unless it is arbitrary or capricious in substance, or manifestly contrary to the statute" (internal quotations omitted)); *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 330 F.3d 1345, 1349–50 (Fed.Cir. 2003) (applying *Chevron* standards to VA's interpretation of its statutory authority as contained in regulation); *Jernigan v. Shinseki*, 25 Vet.App. 220, 224–225 (2012) (same). Therefore, § 3.309(e) in this regard is a valid exercise of the Secretary's rulemaking authority.

### B. Rebuttal of the Presumption of Service Connection

The appellant next argues that the Board clearly erred in finding the August 2012 VA medical opinion adequate. In the alternative, he contends that the Board erred when it found that the August 2012 VA opinion was sufficient to rebut the presumption of service connection under the standards set forth in § 3.307(d).

■ Whether a medical opinion is adequate is a finding of fact that the Court reviews under the "clearly erroneous" standard. *See* 38 U.S.C. § 7261(a)(4); *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008). " 'A finding is "clearly erroneous"

when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). When applying this standard, if the Court determines, after reviewing the record in its entirety, that the Board's finding of fact is supported by a plausible basis, "'the [Court] may not reverse it even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

To rebut a presumption of service connection based on herbicide exposure, section 1113 requires

> affirmative evidence to the contrary, or evidence to establish that an intercurrent injury or disease which is a recognized cause of any of the diseases or disabilities within the purview of section ... 1116 ... of this title, has been suffered between the date of separation from service and the onset of any such diseases or disabilities.

38 U.S.C. § 1113. Section 3.307(d)—which, as discussed above, adopted section 1113's rebuttal provisions for all presumptions of service connection based on herbicide exposure under § 3.309 regardless of where that exposure occurred—further provides that

> [e]vidence which may be considered in rebuttal of service incurrence of a disease listed in § 3.309 will be any evidence of a nature usually accepted as competent to indicate the time of existence or inception of disease, and medical judgment will be exercised in making determinations relative to the effect of intercurrent injury or disease. The ex-

pression "affirmative evidence to the contrary" will not be taken to require a conclusive showing, but such showing as would, in sound medical reasoning and in consideration of all evidence of record, support a conclusion that the disease was not incurred in service.

38 C.F.R. § 3.307(d)(1).

█ We cannot agree with the appellant that the Board clearly erred when it determined that the August 2012 VA opinion was adequate for rating purposes. *See D'Aries*, 22 Vet.App. at 104; *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court."), *aff'd per curiam*, 232 F.3d 908 (Fed.Cir.2000) (table). Although the appellant faults the examiner for failing to provide an adequate rationale, the August 2012 opinion, when read as a whole, explains the examiner's reasons—albeit tenuous—for concluding that the "evidence suggests that [his] hepatitis C infection led to the development of the lymphoma." R. at 81; *see Monzingo v. Shinseki*, 26 Vet.App. 97, 106 (2012) (stating that a medical opinion that does not "explicitly lay out the examiner's journey" from facts to conclusion is not inadequate so long as the Court can discern the examiner's reasoning); *Acevedo v. Shinseki*, 25 Vet.App. 286, 294 (2012) (noting that medical reports "must be read as a whole" in determinations of adequacy). In particular, the examiner supported his conclusion with citation to medical literature linking hepatitis C and non-Hodgkin's lymphoma and noted that the appellant's lymphoma did not manifest until after he had been diagnosed with hepatitis C.

█ We agree, however, that the Board failed to provide an adequate statement of reasons or bases for its finding that the evidence of record was sufficient to rebut the presumption of service connection for the appellant's non-Hodgkin's lymphoma,

as it misstated the ultimate conclusion of the August 2012 VA opinion. Section 1113(a) and § 3.307(d) "establish two separate, although similar, standards, in addition to 'willful misconduct,' under which a presumption of service connection ... will be found to be inapplicable." *Goodsell v. Brown*, 5 Vet.App. 36, 43 (1993). The presumption will be found inapplicable:

> (1) when there is evidence "to establish that an intercurrent injury or disease which is a recognized cause of [the chronic disease for which service connection is sought] has been suffered between the date of separation from service and the onset of any such disease[ ]"; or (2) when there is other "affirmative evidence to the contrary [of the presumption of service connection]", within the meaning of section 1113(a) and § 3.307(d) that "would ... support a conclusion that the disease was not incurred in service."

*Id.* Under § 3.307(d), " 'affirmative evidence to the contrary' will not be taken to require a conclusive showing, but such showing as would, in sound medical reasoning and in the consideration of all evidence of record, support a conclusion that the disease was not incurred in service." 38 C.F.R. § 3.307(d).

Here, the Board applied the second rebuttal standard and relied on the August 2012 examination to conclude that "the record in this case includes affirmative evidence which fully rebuts [the] presumption." R. at 6–7. Because the examiner did not explicitly opine that the appellant's lymphoma was not incurred in service,[2] the Board focused on the opinion's discussion regarding the effect of the appellant's hepatitis C on his lymphoma. In characterizing the opinion, however, the Board confused the *possibility* that hepatitis C led to the development of the lymphoma with the *probability* that it did so. Although the August 2012 opinion states that "the evidence *suggests* that the hepatitis C infection led to the development of lymphoma," R. at 81 (emphasis added), the Board instead cites the opinion for the proposition that "it was *likely* that the hepatitis C infection led to the development of the lymphoma," R. at 7 (emphasis added). Additionally, the Board failed to discuss the examiner's concurrent findings that "the absence of past studies would make a determination of the etiology of [the lymphoma] impossible" and that "the risk of developing the tumor is greater" in those exposed to Agent Orange, even for those with "a normal immune system." R. at 80–81. The Board also neglected to discuss, in concluding that the opinion is "contrary" to the statutory presumption of service connection, the opinion's lack of specificity as to the probability that hepatitis C was the *sole* cause of the lymphoma, to the exclusion of Agent Orange exposure as a contributory cause.[3]

---

**2.** We do not mean to suggest that the examiner was required to do so under the regulation. On the contrary, § 3.307(d) does not define "affirmative evidence to the contrary" as an explicit medical opinion that a condition did not begin in service but, rather, as evidence that "would, in sound medical reasoning and in the consideration of all evidence of record, support a conclusion that the disease was not incurred in service."

**3.** The opinion's lack of specificity in this regard stands in contrast to the Board's June 2012 request for a medical opinion as to whether "the evidence in its entirety supports the conclusion that the Veteran's non-Hodgkin's lymphoma was not incurred in, or *otherwise caused by,* his military service." R. at 84 (emphasis added).

In addition, we express no view as to whether an intervening cause that was only contributory, as opposed to exclusive, could ever constitute sufficient "affirmative evidence to the contrary" to rebut the presumption of service connection. That issue is not

The distinction between possibility and probability is important, particularly in the context of the rebuttal of a regulatory presumption of service connection, and the Board's failure to recognize this distinction frustrates judicial review. In particular, we simply cannot know whether the Board, had it accurately characterized and discussed the August 2012 opinion, would have concluded that the evidence of record constituted " 'affirmative evidence to the contrary' ... as would, in sound medical reasoning ... support a conclusion that the disease was not incurred in service." 38 C.F.R. § 3.307(d).

We thus conclude that the Board's statement of reasons or bases for this determination is inadequate. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown,* 7 Vet.App. 517, 527 (1995) ("The [Board's] statement [of reasons or bases] must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court."). Accordingly, we will vacate the Board's decision and remand the issue of service connection for non-Hodgkin's lymphoma for the Board to accurately and adequately discuss the evidence of record, including whether it rebuts the presumption of service connection under the standards set forth in 38 C.F.R. § 3.307(d). In addition, VA must consider "whether there is 'sufficient competent medical evidence' " to decide the claim and, if not, obtain additional evidence. *McLendon v. Nicholson,* 20 Vet. App. 79, 85 (2006) (quoting 38 C.F.R. § 3.159(c)(4)(i)); *see Douglas v. Shinseki,* 23 Vet.App. 19, 24 (2009) (concluding that the Secretary's authority to develop a claim necessarily includes the authority to collect and develop evidence that might rebut the presumption of service connection). We will deny the appellant's request for reversal of the Board's decision.

*See Tucker v. West,* 11 Vet.App. 369, 374 (1998) (holding that, "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy").

On remand, the appellant is free to submit evidence and argument on the remanded matters, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi,* 16 Vet. App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to the benefit sought); *Kutscherousky v. West,* 12 Vet.App. 369, 372–73 (1999) (per curiam order). The Court has held that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring the Secretary to provide for "expeditious treatment" of claims remanded by the Court.

### III. CONCLUSION

Accordingly, the December 10, 2012, Board decision that denied entitlement to service connection for non-Hodgkin's lymphoma is VACATED, and that matter is REMANDED for readjudication consistent with this decision.

ripe for review due to the need for further VA factfinding.